1  EVAN R. MOSES, CA Bar No. 198099
   evan.moses@ogletree.com
2  OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
3  400 South Hope Street, Suite 1200
   Los Angeles, California 90071
4  Telephone: (213) 239-9800
   Facsimile: (213) 239-9045
5
   ERIC E. SUITS, CA Bar No. 232762
6  eric.suits@ogletree.com
   OGLETREE, DEAKINS, NASH,
7  SMOAK & STEWART, P.C.
   400 Capitol Mall, Suite 2800
8  Sacramento, California 95814
   Telephone: (916) 840-3150
9  Facsimile: (916) 840-3159

10 Attorneys for Defendant
   AUTOZONERS, LLC
11

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| JOHAN DANIEL, an individual and on behalf of Aggrieved Employees, | Case No. _____ |
|---|---|
| Plaintiff, | **DEFENDANT AUTOZONERS LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT** |
| vs. | |
| AUTOZONERS, LLC, dba AutoZone, a Nevada Limited Liability Company; AUTOZONE LLC, a California Limited Liability Company; JESUS GONZALEZ, an individual; and DOES 1 through 20, inclusive, | [Filed concurrently with Civil Cover Sheet; Certification of Interested Parties and Disclosure Statement; Declarations of John Babick and Michele Wood in Support of Removal] |
| Defendants. | Action Filed:  March 26, 2024<br>Trial Date:    None |

1

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFF JOHAN DANIEL, AND HIS COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453 and 1711, Defendant AUTOZONERS, LLC ("Defendant") hereby removes to the United States District Court for the Central District of California the above-captioned state court action, originally filed as Case No. 24STCV07723 in Los Angeles County Superior Court, State of California. Removal is proper on the following grounds:

## I.  TIMELINESS OF REMOVAL

1.  Plaintiff JOHAN DANIEL ("Plaintiff") filed a putative Class Action Complaint against Defendant in Los Angeles County Superior Court, State of California, Case No. 24STCV07723, on March 26, 2024. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the Summons and Complaint, and all other process, pleadings and orders served on Defendant in the State Court Action are attached to this Notice of Removal as **Exhibit A**.

2.  On March 27, 2024, Defendant received service of the Summons and Complaint through their registered agents for service of process. These documents were the initial pleadings received by Defendant setting forth of the claims upon which this action is based. On March 27, 2024, 2024, Plaintiff served a Proof of Service of Newly Filed Class Action and Initial Status Conference Order, the Court Order re: Newly Filed Class Action, and the Initial Status Conference Order on Defendant. True and correct copies of these documents, along with all pleadings, process and other documents Defendant received in this action, are attached hereto as **Exhibit A**.

3.  The time to remove under 28 U.S.C. § 1446(b) does not begin to run until receipt by the defendants, through service or otherwise, of a pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or

///

has become removable. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005).

4. The Complaint does not provide readily ascertainable grounds for removal.

5. As such, this Notice of Removal is timely filed.

## II.  SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL

6. Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1453 because this Court has subject-matter jurisdiction over this action and all claims asserted against Defendant, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), *id.* § 1332(d).

7. CAFA applies "to any class action before or after the entry of a class certification order by the court with respect to that action." *Id.* § 1332(d)(8). This case is a putative "class action" under CAFA because it was brought under California Code of Civil Procedure § 382, California's state statute or rule authorizing an action to be brought by one or more representative persons as a class action. *See* 28 U.S.C. § 1332(d)(1)(B).

8. Plaintiff seeks to represent the following Class and Subclasses:

> All persons who were employed by Defendants, within the Relevant Time Period as a member of Defendants' CLASS PLAINTIFFS or with any similar title who were non-exempt or misclassified employees and are owed unpaid minimum wages, unpaid overtime wages, penalties for noncompliant and/or missed meal and rest breaks, were provided inaccurate wage statement, and were not timely paid during and/or following their employment with Defendants. (Compl., ¶ 42.)

> The Overtime Class consists of all of Defendants' current and former non-exempt employees in California who worked over 8.0 hours in a workday and/or over 40 hours in a workweek and were subject to Defendants' timekeeping policies/practices, during the Relevant Time Period. (*Id.*, ¶ 43.)

> The Minimum Wage Class consists of all of Defendants' current and former non-exempt employees in California who were subject to Defendants' timekeeping policies/practices, and/or employees forced to work off-the-clock without compensation, during the Relevant Time Period.

The Meal Period Class consists of all of Defendants' current and former non-exempt employees in California who worked at least one shift in excess of 5.0 hours, during the Relevant Time Period. (*Id.*)

The Rest Period Class consists of all Defendants' current and former non-exempt employees in California who worked at least one shift in excess of 3.5 hours, during the Relevant Time Period. (*Id.*)

The Wage Statement Class consists of all members of the Overtime Class, Double Overtime Class, Minimum Wage Class, Meal Period Class, and/or Rest Period Class who were employed by Defendants during the Relevant Time Period. (*Id.*)

The Waiting Time Class consists of all members of the Overtime Class, Double Overtime Class, Minimum Wage Class, Meal Period Class, and/or Rest Period Class, who were employed with Defendants during the Relevant Time Period. (*Id.*)

9. In the Complaint, Plaintiff alleges eight (8) causes of action against Defendant: (1) Failure to Pay Minimum Wages; (2) Failure to Furnish Wage and Hour Statements; (3) Failure to Maintain Payroll Records; (4) Failure to Provide Meal and Rest Periods; (5) Failure to Pay Wages in a Timely Manner; (6) Failure to Pay Overtime Compensation; (7) Waiting Time Penalties; and (8) Violation of Business and Professions Code section 17200. (Compl.)

10. Among other things, Plaintiff alleges putative class members are entitled to unpaid wages- both minimum wages and overtime, meal and rest period premiums, statutory penalties for late payment of wages and inaccurate wage statements, interest, and attorneys' fees. (Compl., ¶¶ 52-94.) More specifically, Plaintiff alleges the following: "In actuality, Plaintiffs were forced to work without compensation through meal and rest periods. Plaintiffs were also left without compensation for work done while off the clock. In essence, Defendant used an inaccurate time sheet to circumvent California's Labor Code and secure more labor for less cost, at the expense of their employees such as Plaintiff" (*Id.*, ¶ 6); "Within the time period of four years preceding the date of this complaint ("Relevant Time Period"), Plaintiffs were not provided compliant meal and rest breaks as statutorily mandated, were forced to work through statutorily mandated meal and rest breaks without pay, were not paid legally mandated minimum, overtime and waiting time wages, did not receive accurate itemized wage

statements, and were not paid all wages earned and owed in a timely manner" (*Id.*, ¶ 27); "Defendants failed and refused to pay Plaintiffs the total amount of wages that Plaintiffs, through their employment and labor, earned working for Defendants. Defendants' timekeeping policies and/or practices resulted in Plaintiffs not being compensated for all hours actually worked." (*Id.*, ¶ 32); "Defendants' timekeeping policies and/or practices resulted in Plaintiffs not being compensated for all hours actually worked" (*Id.*); "During Plaintiffs' employment with Defendants, Defendants' policies/practices were to only compensate Plaintiffs for eight (8) hours each workday, despite Plaintiffs regularly working shifts greater than eight (8) hours in length. (*Id.*); In addition, Plaintiffs were routinely forced to work off the clock without any compensation due to Defendants' requirement that Plaintiffs perform work either prior to clocking in or to perform work after clocking out for the day" (*Id.*); "For the entirety of Plaintiffs' employment with Defendants, Defendants consistently failed to provide Plaintiffs with timely, accurate, and itemized wage and hour statements, in writing, showing gross wages earned, total hours worked, all deductions made, net wages earned, the name and address of the legal entity employing them, all applicable hourly rates in effect during each pay period, and the corresponding number of hours worked by them at each hourly rate in and among other information, as required by California wage-and-hour laws"  (*Id.*, ¶ 33); "For the entirety of Plaintiffs' employment, Defendants' meal period policies/practices failed to provide Plaintiffs with all legally compliant meal periods because Defendants failed to provide Plaintiffs with timely, duty-free, and uninterrupted 30-minute meal periods commencing before the end of the fifth hour of work" (*Id.*, ¶ 34); "For the entirety of Plaintiffs' employment, Plaintiffs were not authorized and permitted to take all required and legally-compliant rest periods due to Defendants' rest period policies/practices, which failed to authorize and permit a net 10-minute off-duty rest period for every four hours worked" (*Id.*, ¶ 34); "On those occasions when Plaintiffs were not authorized and permitted to take all legally-required and compliant rest periods to which they were entitled, Defendants

further failed to compensate Plaintiffs with the required rest period premium for each workday in which they were experienced a rest period violation as mandated by Labor Code § 226.7" (*Id.*, ¶ 35); "Further, Defendants have failed to pay all earned wages owed to Plaintiffs for the noncompliant and/or missed meal and rest periods under Labor Code section 226.7(b) and Wage Order 5. Plaintiffs were and are entitled to an hour of pay at their regular rate for each day with a meal period violation and an additional hour of pay for each day with a rest period violation. Plaintiffs have not received that payment" (*Id.*, ¶ 36); "For the entirety of Plaintiffs' employment with Defendants, Defendants consistently failed to maintain accurate payroll records for Plaintiffs"; (*Id.*, ¶ 37) "For the entirety of Plaintiffs' employment with Defendants, Defendants routinely required Plaintiffs to work more than eight hours per day and 40 hours per week. Plaintiffs did not receive accurate compensation for straight, regular time pay, and overtime pay" (*Id.*, ¶ 38); and "Defendants failed to pay all wages due and owed to Plaintiffs at the time of their termination or within seventy-two (72) hours of their resignation, as required by California wage-and-hour laws in violation of Labor Code sections 201-203. Plaintiffs who are no longer employed by Defendants are entitled to penalties pursuant to Labor Code section 203, in the amount of each person's daily wage multiplied by the number of days since the termination, up to thirty days" (*Id.*, ¶ 39).

11. Removal of a class action under CAFA is proper if: (1) there are at least one hundred (100) members in the putative class; (2) there is minimal diversity between the parties, such that at least one class member is a citizen of a state different from any defendant; and (3) the aggregate amount in controversy exceeds five million dollars ($5,000,000), exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d), 1441.

12. Defendant deny any liability in this case, both as to Plaintiff's individual claims and as to the claims he seeks to pursue on behalf of the putative class. However, solely for purposes of the jurisdictional requirements for removal, the allegations in Plaintiff's Complaint and a thorough analysis of Defendant's data demonstrates there

is a putative class of more than one hundred (100) members and the alleged claims place in controversy are an amount substantially exceeding five million dollars ($5,000,000). *See* 28 U.S.C. § 1332(d)(6).

      **A.**    <u>**The Proposed Class Consists of More Than One Hundred (100) Members**</u>

13.    Based on the allegations in the Complaint, this action satisfies CAFA's requirement that the putative class contains at least one hundred (100) members. *See* 28 U.S.C. § 1332(d)(5)(B).

14.    Plaintiff proposes to represent "[a]ll persons who were employed by Defendants, within the Relevant Time Period as a member of Defendants' CLASS PLAINTIFFS or with any similar title who were non-exempt or misclassified employees and are owed unpaid minimum wages, unpaid overtime wages, penalties for noncompliant and/or missed meal and rest breaks, were provided inaccurate wage statements, and were not timely paid during and/or following their employment with Defendants." (Compl., ¶ 42.) Plaintiff seeks to represent a sub-class of "[a]ll of Defendants' current and former non-exempt employees in California who worked over 8.0 hours in a workday and/or over 40 hours in a workweek and were subject to Defendants' timekeeping policies/practices, during the Relevant Time Period." (*Id.*, ¶ 43.) Plaintiff further seeks to represent a sub-class of "[a]ll of Defendants' current and former non-exempt employees in California who were subject to Defendants' timekeeping policies/practices, and/or employees forced to work off-the-clock without compensation, during the Relevant Time Period." (*Id.*)  Plaintiff further seeks to represent a sub-class of "[a]ll of Defendants' current and former non-exempt employees in California who worked at least one shift in excess of 5.0 hours, during the Relevant Time Period. (*Id.*) Plaintiff further seeks to represent a sub-class of "[a]ll Defendants' current and former non-exempt employees in California who worked at least one shift in excess of 3.5 hours, during the Relevant Time Period." (*Id.*) Plaintiff further seeks to represent a sub-class of "[a]ll members of the Overtime Class, Double Overtime Class, Minimum Wage Class, Meal Period Class, and/or Rest Period Class

who were employed by Defendants during the Relevant Time Period." (*Id.*) Plaintiff further seeks to represent a sub-class of "[a]ll members of the Overtime Class, Double Overtime Class, Minimum Wage Class, Meal Period Class, and/or Rest Period Class, who were employed with Defendants during the Relevant Time Period." (*Id.*)

15. The putative classes consist of those who were and are employed by Defendant in California at any time during the period of four (4) years prior to the filing of the Complaint. (*Id.*, ¶¶ 42-43.) Based on a review of Defendant's business records, the putative class, as defined by Plaintiff's Complaint, includes over 34,224 putative class members. (Declaration of John Babick in Support of Defendant's Notice of Removal ["Babick Decl."], ¶ 4.) Additionally, Defendant's business records reflect, the number of putative class members terminated during the relevant time period to be at least approximately 36,321. (*Id.*)

16. Although Defendant denies class treatment is appropriate, Plaintiff's proposed class, as pled, and if certified, would easily consist of more than one hundred (100) members.

### B. Diversity of the Parties Exists

17. Under CAFA's minimum diversity of citizenship requirement, the plaintiff or any member of the putative class must be a citizen of a different state from any defendant. *See* 28 U.S.C. § 1332(d)(2)(A). That is, the citizenship of at least one class member is diverse from the citizenship of at least one defendant. *Id.*

18. A person is a citizen of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A party's residence is *prima facie* evidence of his or her domicile. *Ayala v. Cox Auto., Inc.*, No. CV 16-06341-GHK (ASx), 2016 WL 6561284, at *4 (C.D. Cal. Nov. 4, 2016) (citing *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994)). Plaintiff has alleged he is a resident of California. (Compl., ¶ 9.) These allegations are *prima facie* evidence of domicile, which creates a rebuttable presumption sufficient to support removal. *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (allegations of

residency in state court complaint create rebuttable presumption of domicile). Plaintiff is therefore considered a citizen of California for purposes of removal under CAFA. *See Ayala*, 2016 WL 6561284 at *4.

19. The citizenship of an LLC for the purposes of diversity jurisdiction is the location of citizenship of its members. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

20. At the time this action commenced in state court and as remains today, Defendant AutoZoners, LLC is a limited liability company organized under the laws of the State of Nevada. Declaration of Michele Wood ["Wood" Decl."], ¶ 2.) The sole member of AutoZoners, LLC is AutoZone Investment Corporation, which performs its executive and administrative functions in Memphis, Tennessee. (*Id.*) The President, Chief Executive Officer, Chief Financial Officer, and General Counsel all operate out of the high level corporate office in Memphis, Tennessee. (*Id.*)

21. The Supreme Court has interpreted the phrase "principal place of business" in 28 U.S.C. § 1332(c)(1) to mean "the place where a corporation's officers direct, control, and coordinate the corporation's activities," *i.e.*, its "nerve center," which "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination[.]" *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

22. AutoZoners, LLC's business operations and executive and administrative functions are controlled by its corporate headquarters in Memphis, Tennessee. (Wood Decl., ¶ 2.)

23. Thus, Defendant AutoZoners, LLC is a citizen of Tennessee.

24. "For purposes of removal … the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1). Inclusion of "DOE" defendants in a state court Complaint has no effect on removability. *Newcombe v. Adolph Coors Co.*, 157 F.3d 686, 690 (9th Cir. 1998) (holding that in determining whether diversity of citizenship exists, only named defendants are considered).

9
DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION

Therefore, Plaintiff's inclusion of DOES 1 through 20 in the Complaint is inapposite to the issue of diversity or removal.

25. Pursuant to 28 U.S.C. §§ 1332(a) and 1441(a), this Court has original jurisdiction over this case under CAFA because Plaintiff is and was, at all times relevant to this action, a citizen of the State of California, and Defendant AutoZoners, LLC is and was, at all times relevant to this action, a citizen of the States of Nevada and Tennessee, respectively. Therefore, complete diversity between Plaintiff and defendant AutoZoners, LLC exists now, and did exist at the time the Complaint was filed, and minimal diversity exists between Defendant and the putative class.

C. **The Amount in Controversy Exceeds Five Million Dollars ($5,000,000)**

26. Pursuant to 28 U.S.C. § 1332(d), this Court has original jurisdiction over this matter because, in addition to the other requirements of § 1332(d), the amount in controversy in this action exceeds five million dollars ($5,000,000), exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2). Of note, in calculating the amount in controversy, a court must aggregate the claims of all individual class members. *See* 28 U.S.C. § 1332(d)(6).

27. Unlike other cases, there is no anti-removal presumption for cases invoking CAFA. *Arias v. Residency Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019).

28. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Op. Co. v. Owens*, 574 U.S. 81, 89 (2014). A removing defendant's notice of removal "need not contain evidentiary submissions." *Arias*, 936 F.3d at 922 (quoting *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015)). Thus, to satisfy its burden, a defendant may rely on a "chain of reasoning" that is based on "reasonable" "assumptions." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015). "An assumption may be reasonable if it is founded on the allegations of

the complaint." *Arias*, 936 F.3d at 925; *see also Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) ("[I]n *Arias* we held that a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements.") (internal citations and punctuation omitted). That is because "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "[I]n that sense, the amount in controversy reflects the maximum recovery the plaintiff could reasonably recover. *Arias*, 936 F.3d at 927 (explaining that amount in controversy includes all amounts "at stake" in the litigation at time of removal, "whatever the likelihood that [plaintiff] will actually recover them") (citing *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018)). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 574 U.S. at 87. Moreover, "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy." *Arias*, 936 F.3d at 922.

29.  Moreover, in assessing whether the amount in controversy requirement has been satisfied, "a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). Indeed, the focus of the Court's inquiry must be on "what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (citing *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)).

///

30. Here, Plaintiff makes allegations that Defendant has consistent practices and policies in effect which result in wage and hour violations. (Compl., ¶¶ 6, 26-41.) Plaintiff places no limitations on the frequency of the occurrence of these purported violations. Thus, it is entirely reasonable for Defendant to use a 100% violation rate when calculating the amount in controversy for each of Plaintiff's claims. *See, e.g., Lewis*, 627 F.3d at 398-401; *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014) (per curiam); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (holding where plaintiff did not submit any evidence as to violation rates, "assumption of a 100 percent violation rate may have been reasonable based on the allegations in the Complaint," which "offered no guidance as to the frequency of the alleged violations, only that [d]efendant had 'a policy and practice' of meal and rest period violations"); *Lopez v. Aerotek, Inc.*, No. SACV 14-00803-(CJGx), 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015) (finding "Aerotek could have logically assumed a 100 percent violation rate because Plaintiff does not qualify his allegations" and "[a]lthough afforded the opportunity to do so on this motion, Plaintiff does not assert or suggest an alternative violation rate on which the Court should rely").

31. Although Defendant categorically denies Plaintiff's claims have any merit, whatsoever, solely for the purposes of meeting the jurisdictional requirements for removal, if Plaintiff were to prevail on his Seventh Cause of Action for waiting time penalties alone on behalf of the putative classes, the requested monetary recovery would far exceed five million dollars ($5,000,000).

32. In the Seventh cause of action, Plaintiff alleges Defendant had a practice of knowingly refusing to pay all final wages owed to putative class members and that they are entitled to waiting time penalties pursuant to Labor Code § 203. (Compl., ¶¶ 39, 82-84.)

33. If an employer fails to pay all wages due an employee at the time of termination, as required by Labor Code § 201, or within 72 hours after resignation, as required by Labor Code § 202, then the wages "shall continue as a penalty from the

due date thereof at the same rate until paid or until an action therefor is commenced," for up to a maximum of 30 calendar days. Labor Code § 203.  An employer may not be liable for these penalties if a good-faith dispute exists as to whether the wages are owed.  Further, to be liable for waiting time penalties, an employer's failure to pay wages within the statutory time frame must be willful.  "A willful failure to pay wages within the meaning of Labor Code section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due." Cal. Code Regs., tit. 8, § 13520.

34.   To calculate waiting time penalties, the employee's daily rate of pay is multiplied by a maximum of thirty (30) days, depending on the length of delay in receipt of wages.  *See Mamika v. Barca*, 68 Cal. App. 4th 487, 493 (1998) (holding that waiting time penalty is "equivalent to the employee's daily wages for each day she or he remained unpaid up to a total of 30 days" and noting that "critical computation" is "the calculation of a daily wage rate, which can then be multiplied by the number of days of nonpayment, up to 30 days"); *Tajonar v. Echosphere, LLC*, No. 14cv2732-LAB (RBB), 2015 WL 4064642, at *4 (S.D. Cal. Jul. 2, 2015).  Where final "wages [due] are alleged to have not been paid, the full thirty-days may be used for each of the putative class members." *Marentes v. Key Energy Servs. Cal., Inc.*, No. 1:13-cv-02067 AWI JLT, 2015 WL 756516, at *9 (E.D. Cal. Feb. 23, 2015); *see also Crummie v. CertifiedSafety, Inc.*, No. 17-cv-03892-RS, 2017 WL 4544747, at *3 (N.D. Cal. Oct. 11, 2017) (holding that where plaintiff alleges "putative class members were owed (and are still owed)" wages, it is "completely reasonable to assume waiting time penalties accrued to the thirty-day limit").

35.   Defendant denies any such penalties are owed to Plaintiff or any putative class members.  However, solely for purposes of this jurisdictional analysis, Defendant relies on Plaintiff's allegations that the penalties are owed. Plaintiff's claim is derivative of his minimum wage, overtime, and meal and rest penalty claims, which Plaintiff alleges were a result of policies and practices of Defendant.  Solely for the

purpose of this jurisdictional analysis, Defendant relies on Plaintiff's allegations that the minimum wage, overtime, and meal and rest break claims can be substantiated.

36. Here, Defendant has conservatively estimated the waiting time penalties exposure based a fifteen (15) percent violation rate.

37. However, based on Plaintiff's allegations, it is reasonable to assume that 100% of the former, non-exempt employees (in the three-year section 203 limitations period) are entitled to thirty (30) days' wages. *See Crummie*, 2017 WL 4544747 at *3 (upholding assumption that "waiting time penalties accrued to the thirty-day limit" based on allegations of a pattern or practice of withholding wages owed); *Archuleta v. Avcorp Composite Fab., Inc.*, No. CV 18-8106 PSG (FFMx), 2018 WL 6382049, at *5 (C.D. Cal. Dec. 6, 2018) (assumption of maximum 30-day waiting time penalties was reasonable where "[t]he complaint's claim for waiting time penalties appears to be at least in part based on an allegation that Defendants never paid the 'overtime wages, minimum wages, and meal period violation [payments]' the employees were due"); *Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1188 (E.D. Cal. 2020) ("Because Plaintiff is asking for a maximum statutory penalty of 30 days ... it is reasonable to assume based on the FAC that Plaintiff could obtain statutory penalty of maximum 30 days."); *Mariscal v. Ariz. Tile, LLC*, No. 8:20-cv-02071-JLS-KES, 2021 WL 1400892, at *3 (C.D. Cal. Apr. 14, 2021) (same); *Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-CV-00719-NC, 2019 WL 1501576, at *4 (N.D. Cal. Apr. 5, 2019) ("By tying the unpaid final wage claim to his other claims, *Chavez* makes *Pratt*'s assumption of 100% violation for unpaid wages reasonable—that is, if every putative class member incurred damages for at least one other claim in the complaint, every class member who departed Pratt during the statutory period was due unpaid wages."); *Mackall v. Healthsource Glob. Staffing, Inc.*, No. 16-cv-03810-WHO, 2016 WL 4579099, at *6 (N.D. Cal. Sept. 2, 2016) (finding that "allegations of willful failure to timely pay final wages (based on alleged overtime and meal and rest break violations)" support an estimated 100% violation rate for waiting time penalties).

38. Plaintiff's Complaint alleges that it was Defendant's "policies/practices" to require putative class members to "routinely" work off the clock and fail to provide putative class members with legally required meal and rest breaks. (Compl., ¶ 42.)

39. Thus, although a 100% violation rate would be appropriate, to err on the side of being conservative, Defendant has estimated the waiting time penalties exposure based upon a mere fifteen (15) percent violation rate.

40. Thus, to calculate the amount in controversy for the waiting time penalty claim, Defendant analyzed its business records for the putative class members to determine the number of former employees in the putative class who separated their employment with AutoZone within the three (3) year statute of limitation period (May 3, 2020 to present). (Babick Decl., ¶ 10.) Between March 26, 2021 and June 17, 2023, at least 17,661 employees were terminated or separated from their employment. (*Id*.) Using a fifteen (15) percent violation rate, waiting time penalties would be triggered for 2,649 employees. (*Id.*, ¶ 10.) Thus, the amount in controversy for the waiting time claim for the subset of separated employees was estimated by multiplying each final base hourly rate of 17,661 separated employees, by the average hours worked per shift, by thirty (30) days, by fifteen (15) percent. (*Id*.)

41. Based on Plaintiff's allegations, the amount in controversy on the waiting time penalty claim is at least $8,674,990. (Babick Decl., ¶ 10.)

42. Plaintiff's allegations therefore place more than the requisite five million dollars ($5,000,000) in controversy. The jurisdictional amount-in-controversy requirement is met, and removal to this Court is proper under CAFA.

### III. DEFENDANT HAS SATISFIED THE REQUIREMENTS OF 28 U.S.C. § 1446

55. In accordance with 28 U.S.C. § 1446(a), this Notice of Removal is filed in the District Court of the United States in which this action is pending. The Superior Court of California, Los Angeles County, is located within the Central District of California. Therefore, venue is proper in this Court because it is the "district and

division embracing the place where such action is pending." 28 U.S.C. §§ 84(a) and 1441(a).

56. In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, orders, and other papers served upon Defendant are attached hereto as **Exhibit A**.

57. In accordance with 28 U.S.C. § 1446(d), Defendant's counsel shall serve Plaintiff with a copy of this Notice of Removal and will file a Notice with the Clerk for the Los Angeles County Superior Court. Defendant shall promptly file a Notice of Compliance of these requirements in this Court promptly after completion.

58. As required by Fed. R. Civ. P. 7.1, Defendant concurrently filed its Certificate of Interested Parties with this filing of the Notice of Removal.

### III. CONCLUSION

59. For the foregoing reasons, Defendant AUTOZONERS, LLC and AUTOZONE, LLC hereby removes the above-entitled action to the United States District Court for the Central District of California.

60. In the event this Court has any questions regarding the propriety of this Notice of Removal, Defendant requests this Court set an evidentiary hearing so that they may have an opportunity to more fully brief the Court on the basis of this removal.

DATED:  April 26, 2024

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: _____
Evan R. Moses
Eric E. Suits

Attorneys for Defendant
AUTOZONERS, LLC

# PROOF OF SERVICE
*Johan Daniel v. Autozoners, LLC, et al.*

I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made. At all times herein mentioned I have been employed in the County of Sacramento, in the office of a member of the bar of this court at whose direction the service was made. My business address is 400 Capitol Mall, Suite 2800, Sacramento, California 95814. My email address is: elaine.blizzard@ogletree.com.

On April 26, 2024, I served the following document(s):

**DEFENDANT AUTOZONERS LLC's NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**

by placing ☐ (the original) ☒ (a true copy thereof) in a sealed envelope addressed to:

| | |
|---|---|
| Jonathan P. LaCour, Esq.<br>Lisa Noveck, Esq.<br>Jameson Evans, Esq.<br>Amanda M. Thompson, Esq.<br>EMPLOYEES FIRST LABOR LAW P.C.<br>1 S. Fair Oaks Ave., Suite 200<br>Pasadena, California 91105<br>Telephone: (310) 853-3461<br>Facsimile: (949) 743-5442<br>Email:    jonathanl@pierrelacour.com<br>             lisan@pierrelacour.com<br>             jamesone@pierrelacour.com<br>             amandat@pierrelacour.com | Attorneys for Plaintiff<br>JOHAN DANIEL |

☒ **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Ogletree, Deakins, Nash, Smoak & Stewart, P.C.'s practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on April 26, 2024, at Sacramento, California.

*Elaine M. Blizzard*
Elaine M. Blizzard